Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4952 | **DATE** | 1/3/2005 |
| **CASE TITLE** | KNOWLES vs. TRANS UNION LLC | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion for partial summary judgment is granted. Status hearing set for January 13, 2005 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | JAN 0 4 2005 | | |
| | Notified counsel by telephone. | | | date docketed | | 37 |
| ✓ | Docketing to mail notices. | | | GMA | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| TBK | courtroom deputy's initials | | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LORELEI KNOWLES, | ) | |
| | ) | |
| Plaintiff, | ) | **DOCKETED** |
| | ) | |
| v. | ) | Case No. 03 C 4952  JAN 0 4 2005 |
| | ) | |
| TRANS UNION LLC, | ) | Hon. Mark Filip |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lorelei Knowles ("Plaintiff" or "Knowles") is suing her former employer,

Defendant Trans Union LLC ("Trans Union"), alleging that Trans Union, in violation of Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), subjected her to a race-

based hostile work environment (Count I), and terminated her employment because of her race

(Count II).[1] This case is before the Court on Defendant's Motion for Partial Summary Judgment

on Count I (D.E. 28), and the facts set forth in this opinion are limited to those that are relevant

to this count. For the following reasons, Defendant's motion for partial summary judgment is

granted.

## BACKGROUND

The parties to this suit are as follows.[2] Defendant Trans Union is a corporation with

---

[1]     The characterization of Count I is drawn from Knowles's Local Rule 56.1 Response to
Defendant's Rule 56.1 Statement of Material Facts. (Pl.'s Resp. ¶ 2.)

[2]     The Court notes that Plaintiff often does not comply with the requirements of Local Rule
56.1. *See generally Malec v. Sanford*, 191 F.R.D. 581-588 (N.D. Ill. 2000) (Castillo, J.)
(discussing litigants' obligations, as well as the consequences of failing to meet those
obligations, under Local Rule 56.1); *see also Koszola v. Bd. of Educ. of the City of Chicago*, 385
F.3d 1104, 1107-1108 (7th Cir. 2004).  In this regard, she has failed to respond to many of the
paragraphs of Defendant's Local Rule 56.1 Statement of Material Facts.  Specifically, Knowles'

offices in Chicago, Illinois. (Def.'s St. ¶ 10.) Plaintiff Lorelei Knowles is an African-American woman, who worked for Trans Union at these offices until Trans Union terminated her employment, effective December 31, 2002. (*Id.* ¶ 9.)

Knowles contends that Trans Union encouraged or tacitly approved of specific acts of violent behavior that were directed against her in the course of her employment at Trans Union. (*Id.* ¶ 11.) Knowles alleges three specific acts. (*Id.* ¶ 12.) First, in or about August 1999, a co-worker, Beverly Gehrt ("Gehrt"), "physically and verbally assaulted" Knowles by "pushing and cursing [Knowles] while [Knowles] was sitting at [her] desk." (*Id.*) Second, in or about January 2000, Knowles reported to Trans Union that a supervisor, Timothy Shanovich ("Shanovich"), "verbally and physically assaulted [her] by cursing and shoving her while she was sitting in a chair." (*Id.*) Third, in or about March 2001, Knowles informed Trans Union that Shanovich again "physically assaulted [her]," after which Plaintiff filed an incident report alleging battery with the Chicago Police Department. (*Id.*)

Knowles contacted the Equal Employment Opportunity Commission ("EEOC") after her termination. (*Id.* ¶ 13.) Knowles completed an EEOC Form 283 (the "Intake Questionnaire") on

_____

has failed to respond to paragraphs 1, 3-4, 9-11, 13, 17, 19-20, 23, and 25. These paragraphs are, therefore, deemed admitted. *See, e.g., Koszola,* 385 F.3d at 1108 ("'[A]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.'") (quoting Local Rule 56.1(b)(3)(B)). With respect to the responses she does make, Plaintiff often fails to respond in the manner required by Local Rule or otherwise demonstrate a disputed issue of material fact. (To be entirely fair to Plaintiff, at least some of these statements of fact merely mirror allegations Plaintiff previously asserted in her Amended Complaint.) These paragraphs (*i.e.,* paragraphs 12, 14-16, 18, 22, 24, 26) are, therefore, also deemed admitted. *See Greer v. Bd. of Educ. of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001) ("Local Rule 56.1 . . . requires the non-moving party to admit or deny each factual statement proffered by the defendant and to designate with specificity and particularity those material facts believed to establish a genuine dispute for trial.") (footnote omitted).

January 30, 2003. (*Id.*) Knowles alleged on the Intake Questionnaire that (1) Trans Union terminated her employment because of her race and age and (2) that Gehrt and Shanovich harassed her because of her race and age, and that Trans Union "did nothing to help [her] when [she] reported the . . . incidents." (*Id.* ¶ 14.)

At some point in or around January 2003, Knowles also contacted Attorney Valda D. Staton ("Staton") for the purpose of obtaining legal services. (*Id.* ¶ 15.) (Staton is one of the attorneys who has filed an appearance on behalf of Plaintiff in this suit. (D.E. 6.)) In this regard, Knowles wanted information about "[her] options and how [she] would have to proceed, if [she] was seeking redress from Trans Union." (Pl.'s Resp. ¶ 15.) Knowles "asked [Staton] to seek some sort of positive resolution to this action, short of full scale litigation, since [Knowles] had limited assets, and [she] had no luck to date getting Trans Union to address [her] concerns with their actions and inactions with regard to [her] employment." (*Id.*)

After reviewing Knowles's "preliminary filings" with the EEOC, in addition to other documents that Knowles provided to Staton relating to her employment and termination, Staton agreed to represent Knowles for the purposes of contesting Trans Union's termination of her employment. (Def.'s St. ¶¶ 16, 17) Staton similarly agreed to assist Knowles "in coordinating efforts with the EEOC Representative assigned to her so that she might complete her [EEOC] filing." (*Id.* ¶ 16.)

Staton sent a letter to Trans Union, on behalf of Knowles, dated February 13, 2003, that stated that Knowles had "engaged" Staton. (*Id.* ¶ 17.) The letter also stated that Knowles would not consent to a severance agreement until she and the EEOC had completed an evaluation of Trans Union's conduct. (*Id.*) In the letter, Staton asked Trans Union to contact her to discuss its

willingness to engage in settlement negotiations to avoid an extensive EEOC investigation. (*Id.* ¶ 19.) Staton also forwarded a copy of this letter to the EEOC Investigator assigned to Knowles's case, and Staton suggested that the parties set a mutually agreeable deadline for discussions and a final settlement. (*Id.* ¶ 18.)

Approximately two weeks later, on February 26, 2003, the EEOC investigator assigned to Knowles's case sent Knowles a draft of Knowles's formal Charge of Discrimination ("EEOC Charge") against Trans Union. (*Id.* ¶ 20.) The EEOC Charge indicated the following types of misconduct: race discrimination, age discrimination, and retaliation (D.E. 29, Ex. 8 (Charge of Discrimination)), and designated December 31, 2002 (the date of Plaintiff's termination), as both the "earliest" date such discrimination took place and the "latest" date it occurred (Def.'s St. ¶ 22). The text of the EEOC Charge containing the "particulars" of the alleged discrimination states in its entirety:

> I was hired by Respondent on or about October 6, 1997. My most recent position was Programmer Analyst. On or about December 31, 2002, I was terminated. Respondent stated that my termination was due to the end of a specific project in which I was not the lead person for this project.
>
> I believe I have been discriminated and retaliated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended[,] and because of my age 44 (DOB: 02/14/1958), in violation of the Age Discrimination in Employment Act of 1967.

(*Id.* ¶ 23.) The EEOC Charge contains no mention of racial harassment or of a hostile work environment. (*Id.* ¶ 24.) (In contrast, the Intake Questionnaire stated that one of the bases for the EEOC complaint was the "ongoing" harassment Knowles alleges that she suffered at the hands of her co-workers. (Pl.'s Resp. ¶ 24.)) The letter from the EEOC investigator accompanying the charge included the following instructions for Knowles: "Review all the information on the

enclosed charge form. If you feel a correction should be made, please call to discuss it with me."
(Def.'s St. ¶ 20.) Knowles signed the EEOC Charge on April 7, 2003, some five weeks after it
was sent. (*Id.* ¶ 21.)

On or about April 21, 2003, the EEOC issued a Dismissal and Notice of Rights
("right-to-sue letter") to Knowles. (*Id.* ¶ 25.) Knowles filed suit against Trans Union on July 17,
2003. (*Id.* ¶ 1.) On December 16, 2003, Knowles filed a two-count Amended Complaint. (D.E.
10.) It is undisputed that each of the three allegations contained in Count I of the Amended
Complaint occurred more than 300 days before Knowles filed her EEOC Charge. (*Id.* ¶ 26.)

<u>ANALYSIS</u>

I.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled to judgment as a matter
of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In
ruling on a summary judgment motion, it is not a court's "function to scour the record in search
of evidence to defeat . . . summary judgment; [a court relies] on the nonmoving party to identify
with reasonable particularity the evidence upon which [the nonmoving party] relies." *Bombard
v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); *see also, e.g., Richards v.
Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995). Federal Rule of Civil Procedure
56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex*, 477 U.S. at 322; *accord, e.g., Richards*, 55 F.3d at 251.

Defendant argues that it is entitled to summary judgment on Count I for two independent reasons. In this regard, Defendant argues that Count I is ill-founded because the race-based hostile work environment claim that Knowles purports to assert is outside the scope of her EEOC Charge. (D.E. 28 at 5.) Defendant also argues that the Count I is time-barred because it is based on alleged conduct that occurred over 300 days prior to Knowles filing her Charge with the EEOC, making it untimely. (*Id.*) Plaintiff responds that Defendant's motion for summary judgment should be denied because issues exist not only as to what is material in this matter, but also as to what standard should be applied in deciding whether Count I of Plaintiff's Amended Complaint is like or reasonably related to the allegations in Knowles's EEOC Charge. (D.E. 34 at 1.)

As explained below, the Court finds that partial summary judgment is appropriate for two independent reasons: (1) the claim in Count I is outside the scope of Ms. Knowles's EEOC Charge; and (2) Count I is untimely.

II.    Knowles's Allegations Are Outside the Scope of Her EEOC Charge

Knowles does not contend that the allegations in Count I of her Amended Complaint are within the scope of, or are like or reasonably related to, the allegations set forth in her EEOC Charge.[3] (*See generally* Def.'s St. ¶ 24.) Rather, she argues that the operative document for

---

[3]    It is prudent that Plaintiff does not argue that the allegations in her EEOC Charge are a sufficient predicate for the race-based hostile work environment claim that is the subject of Count I. In this regard, the Court notes that in *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992), the plaintiff's EEOC charge, like Plaintiff's EEOC Charge here, "only made reference to her termination and to her belief that she had been discriminated against because of her race." The Seventh Circuit held that the *Rush* plaintiff's "racial harassment claims were never properly presented to the EEOC, and therefore were not preserved," in that to the extent

6

purposes of such an analysis is her Intake Questionnaire. (D.E. 34 at 4.) The Intake

Questionnaire, unlike her EEOC Charge, contains allegations that Plaintiff's co-workers, Gehrt

and Shanovich, harassed her because of her race and age, and that Trans Union "did nothing to

help [her] when [she] reported the . . . incidents." (Def.'s St. ¶ 14.) A threshold issue, then, is

whether this Court should consider the allegations contained in Plaintiff's Intake Questionnaire,

as opposed solely to the allegations in her EEOC Charge, in determining the scope of the claims

permitted in this suit. Defendant argues that it is inappropriate to consider the Intake

Questionnaire, citing the Seventh Circuit's opinion in *Novitsky v. American Consulting*

*Engineers, LLC*, 196 F.3d 699 (7th Cir. 1999).

In *Novitsky*, the plaintiff filed an EEOC charge containing allegations that the defendant

violated Title VII by "discharging her on the basis of her . . . religion, and [by] allowing [her co-

workers] to make anti-Semitic remarks in the workplace." *Novitsky*, 196 F.3d at 701. The

plaintiff subsequently brought suit in federal district court, alleging, *inter alia*, that, by denying

the plaintiff's request for time off of work, the defendant violated Title VII by failing to

accommodate her observance of the Jewish religious holiday of Yom Kippur. *Id.* at 700. The

plaintiff's EEOC charge, however, did not "mention Yom Kippur" or "failure to accommodate

[the plaintiff's] religious practices." *Id.* at 701. The Seventh Circuit held that the claims that the

plaintiff could bring in federal court were limited by the allegations contained in her EEOC

charge. *Id.* at 702.

---

that the *Rush* plaintiff was specific regarding racial discrimination in the charge she filed, it was
by referring only to her termination. *Id.* at 1111-1112; *see also Cheek v. Peabody Coal Co.*, 97
F.3d 200, 202-203 (7th Cir. 1996) (holding that a hostile work environment claim is not within
the scope of disparate treatment allegations implicating different individuals and conduct).

The plaintiff in *Novitsky* tried to avoid the limitations of her EEOC charge by, as the Seventh Circuit put it, blaming the EEOC. *Id.* In this regard, the plaintiff's intake questionnaire mentioned the Yom Kippur episode, but the EEOC charge, which was drafted by an EEOC staffer who read the questionnaire, did not. The Seventh Circuit rejected the plaintiff's attempt to draw on the intake questionnaire, holding that "it is the [EEOC] charge rather than the [intake] questionnaire that matters." *Id.* at 702 (citing 42 U.S.C. § 2000e-5(b) and *Perkins v. Silverstein*, 939 F.2d 463, 470 (7th Cir. 1991)); *accord Flaherty v. Marchand*, No. 00-0565, 2001 WL 1242884, at *3 (N.D. Ill. Oct. 17, 2001) (Nordberg, J.). The Seventh Circuit reasoned that only the EEOC charge is sent to the employer, and therefore only the EEOC charge can affect the process of conciliation. *Novitsky*, 196 F.3d at 702.

The Seventh Circuit held that there were no equitable considerations that would warrant consideration of the *Novitsky* plaintiff's intake questionnaire. With respect to any argument that error on the part of the EEOC staffer (and not the plaintiff) was responsible for frustrating the conciliation process, the Seventh Circuit stated:

> [T]he [EEOC] charge is not the work of a faceless bureaucrat, leaving victims of discrimination helpless to protect themselves. Complainants are free to draft and file charges on their own, or hire attorneys to do so, and a charge drafted by the EEOC's staff is not filed unless the complainant signs it—as Novitsky did. If she had been dissatisfied with the staff's understanding of her answers, all she had to do was point this out and ask for an addition.

*Id.* The Seventh Circuit noted that *Novitsky* did not present a scenario where the EEOC refused to accept a charge, or told the plaintiff that an intake questionnaire and an EEOC charge are the same thing, or deceived the plaintiff such that the 300-day period to file a proper EEOC charge would be equitably tolled. *Id.* Rather, the Seventh Circuit reasoned, the plaintiff in *Novitsky*

"had an opportunity to read the [EEOC] charge and, if she wanted, to obtain professional advice on the subject." *Id.* Indeed, the plaintiff in *Novitsky* was accompanied by a lawyer when she signed her EEOC charge, although the Seventh Circuit specifically noted that "the record does not reveal what role the lawyer played." *Id.* Put differently, the decision regarding the scope of the EEOC charge was in the hands of a plaintiff who had not been misled, misinformed, or otherwise misdirected by the EEOC—and the plaintiff had counsel available to her in at least some capacity prior to her signing the EEOC charge. (It is unclear whether access to an attorney was even material because, as the Seventh Circuit noted, people sign legal documents like insurance applications and fine-print contracts—in what are typically not counseled transactions, at least for ordinary citizens—and those documents are binding on the signers whether they received legal counsel or even read the documents. *See id.* at 702.) The Seventh Circuit also specifically rejected the plaintiff's argument that she could not be limited to the language of the EEOC charge because she did not "pay much attention to what she was signing and shouldn't be held to its terms." *Id.* at 702.

The majority opinion in *Novitsky* drew a concurrence from Judge Rovner, who wrote separately "to clarify what [was] before the court." *Id.* at 703. Specifically, Judge Rovner took issue with the following language in the majority opinion:

> [W]hether or not the complainant had a lawyer, whether or not she sought or listened to counsel, indeed, whether or not she read or understood the charge, it was her charge, and it did not put her former employer on notice of any claim related to Yom Kippur.

*Id.* at 702-703 (emphasis omitted). In Judge Rovner's view, "contrary to the opinion's implications," the Seventh Circuit did not "decide whether an illiterate person or pro se person

9

who signs a charge prepared by the EEOC, which leaves out critical information provided by the claimant to the EEOC in the intake questionnaire, would be similarly bound by the charge." *Id.* at 703. Rather, Judge Rovner reiterated a point recognized in the majority opinion, that "equitable considerations" may warrant a court looking beyond the formal EEOC charge. *Id.*

Sometimes (but not here, at least for present purposes, as explained further below), lower courts are required to apply precedent in which majority opinions and concurring opinions are in conflict. When such a conflict exists and is implicated by the facts of a case, the lower court is required, of course, to treat the majority opinion as the applicable precedent. *See, e.g., Noble v. United States*, 231 F.3d 352, 356 (7th Cir. 2000).

Whatever arguable tension might exist between the two opinions in *Novitsky,* given the facts of this case, this Court can take a middle path and, in doing so, it is still clear that summary judgment in favor of Trans Union is appropriate under *Novitsky.* (Were the facts of this case different, then it might be necessary to resolve any potential conflict between the *Novitsky* opinions. However, given the facts of this case, such an effort is unnecessary.) When applying *Novitsky,* it is clear that the case stands for at least this much: absent equitable considerations that require otherwise, a Title VII plaintiff who has access to counsel in connection with the receipt of an EEOC charge prepared by an EEOC staffer, and who adopts the draft as her formal charge by signing it, must live with the charge that she chose to sign and cannot blame the so-called "omission" of allegations in that signed charge on the EEOC.[4] It is undisputed that Plaintiff had

---

[4]    "Access," given that the Seventh Circuit in *Novitsky* indicated that the record did not reveal what role, if any, the plaintiff's lawyer played in reviewing the draft of the EEOC charge, means that the plaintiff, under the circumstances of the case *sub judice*, had the option of obtaining legal advice in connection with filing an EEOC charge. Plaintiff certainly had "access" to legal advice in this sense. Plaintiff's counsel was involved in the case from at least January

counsel assist her "in coordinating efforts with the EEOC [r]epresentative assigned to [Plaintiff] so that [Plaintiff] might complete her [EEOC] filing." (Def.'s St. ¶ 16; Staton Aff. ¶ 5.) There is no indication that the EEOC misled or misdirected Plaintiff. Moreover, the charge, which did not contain any allegations of a race-based hostile work environment, was sent to Plaintiff for her review on February 26, 2003, and Plaintiff did not sign it until April 7, 2003. (Def.'s St. ¶¶ 20, 21.) This is not the case of a litigant who was not afforded the opportunity to have counsel review the charge that she ultimately signed. The potential equitable considerations that Judge Rovner alluded to are simply not present in this case. And although Plaintiff argues that "[t]here is no evidence that [counsel] either read and/or helped [her] with the drafting and/or reviewing of her [EEOC Charge]" (D.E. 34 at 2), *Novitsky* does not support imposition of such a requirement. *See Novitsky*, 196 F.3d at 702 (noting that "the record does not reveal what role the lawyer

---

2003, well before Plaintiff signed the EEOC Charge in April 2003. (Def.'s St. ¶¶ 15, 21.) Moreover, Plaintiff's lawyer reviewed Plaintiff's preliminary EEOC filings (*id.* ¶ 16; Staton Aff. ¶ 4), and coordinated communications amongst the Plaintiff, Defendant, and the EEOC. (Def.'s St. ¶¶ 17, 18; Staton Affidavit ¶ 5.) There is no meaningful distinction between the access that the plaintiff in *Novitsky* had to her counsel and the access that Knowles's had to her counsel here. Furthermore, the Seventh Circuit did not find that the *Novitsky* plaintiff's lawyer had actually reviewed and recommended that the plaintiff sign the draft of the EEOC Charge with which she was presented. The only apparent distinction between the facts of this case and those of *Novitsky*, and the Court does not view it as material, is that the *Novitsky* plaintiff's counsel physically accompanied her when she signed the EEOC charge. The fact that the *Novitsky* plaintiff's counsel was physically present, however, cannot be material, at least in a day and age where technologies like the telephone, cell phone, fax machine, and various other modes of transmitting information are commonplace. Moreover, the EEOC staffer mailed the Charge to Plaintiff on February 26, 2003, and Plaintiff did not sign it until April 7, 2003, more than a month later. Plaintiff does not suggest that she was prohibited from seeking legal advice from her retained counsel (or any other counsel, were Ms. Staton unavailable for some unasserted reason) during this month-long-plus period.

11

played").[5] Under the Seventh Circuit's teaching in *Novitsky,* summary judgment is appropriate in favor of Defendant on Count I, and it is not necessary to resolve any potential tension between the opinions in *Novitsky* to reach that result.[6]

---

[5] By way of perspective, it is worth noting that, in the criminal law arena, the law permits individuals to choose to speak and act without counsel, even when an individual has been taken into custody without prior notice, and even when the arrestee faces the most serious possible punishments known in the law. In this case, Ms. Knowles had previously engaged counsel and had some five weeks to review the EEOC charge (and seek whatever advice she chose concerning it) before she elected to sign the EEOC charge.

[6] When the issue of Ms. Staton's interactions with Ms. Knowles prior to the preparation of the EEOC charge first came to the fore, Ms. Knowles submitted an affidavit from Ms. Staton concerning the engagement. (D.E. 26; *see also id.* ¶ 5 ("I also assisted Ms. Knowles in coordinating efforts with the EEOC Representative assigned to her so that she might complete her filing.").) Ms. Knowles later submitted her own affidavit in connection with her response to the partial summary judgment motion at issue. (D.E. 34, Knowles Aff.) At times Knowles's summary judgment response brief implies that there is a material conflict between the Staton and Knowles affidavits that might preclude summary judgment. (D.E. 34 at 2.) The Court respectfully disagrees. First, Plaintiff cannot create an issue of fact to forestall a ground for summary judgment by contradicting the sworn statement of her own attorney submitted in support of Plaintiff's very case. *See, e.g., Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) ("[A] party cannot create an issue of fact by submitting an affidavit whose conclusions contradict prior testimony."); *Hartman v. Lisle Park Dist.*, 158 F. Supp. 2d 869, 876 (N.D. Ill. 2001) ("An attorney is the agent of his client, and the client is bound by the attorney's acts and statements made within the scope of their relationship.") (internal citations omitted). Second, the testimony offered by Plaintiff in the two affidavits does not create a necessary conflict. For example, Ms. Knowles avers that she contacted her attorney after she signed the EEOC charge (Knowles Aff. ¶ 10), but she also states that when she did so, she was contacting Ms. Staton "again." (*Id.*) As a result, there is no conflict with Ms. Staton's sworn testimony that she earlier spoke with Ms. Knowles and that Ms. Staton was engaged to "assist Ms. Knowles in coordinating efforts with the EEOC Representative assigned to her so that she might complete her filing." (Staton Aff. ¶ 5.) Again, Ms. Knowles cannot contradict prior sworn testimony submitted on her behalf to forestall a basis for summary judgment, but even if one reads the two statements together, the record submitted shows at least this much: counsel was engaged by Knowles to assist in, *inter alia*, the completion of the EEOC filing (*id.*; D.E. 29, Ex. 4 (Letter of February 13, 2003, from Valda Staton to Ronald Wegrzyn); Def.' St. ¶ 17), "though the record does not reveal what role [her counsel] played." *Novitsky v. Am. Consulting Engineers, LLC*, 196 F.3d 699, 702 (7th Cir. 1999). As discussed in greater detail elsewhere in this opinion, that scenario renders summary judgment appropriate for Defendant on Count I under applicable Seventh Circuit teaching.

III.     Knowles's Allegations Are Time-Barred

Without regard to the scope of the EEOC charge, Plaintiff's hostile work environment

claim nonetheless fails because none of the incidents that would properly form a continuing

violation occurred within the 300-day statute of limitations.  Thus, Count I is time-barred.

Summary judgment is therefore granted on Count I for this alternative, independent reason.

Defendant argues that Plaintiff's attempt to cast Count I as a continuing violation must

fail.  (D.E. 28 at 10.)  In this regard, Defendant argues that each of the three incidents of verbal

and physical abuse that Plaintiff identifies in Count I constitutes "a discrete act of discrimination,

independently identifiable and separately actionable under Title VII."  (*Id.*)  As such, Defendant

contends, these three incidents cannot be used to form the basis of a continuing violation claim.

(*Id.*)  Defendant further argues that, even if the incidents of physical and verbal abuse are not

discrete acts, none of the alleged acts of harassment occurred within the 300-day limitations

period and, therefore, a continuing violation claim based on those incidents is untimely.  (*Id.*)

Plaintiff does not meaningfully respond to these arguments.  In this regard, Plaintiff

merely advances the generic argument that "it is well established that it is proper to describe

discriminatory acts as continuing violations thus allowing Plaintiff to defer filing suit until the

end of the statutory period applicable to the last act."  (D.E. 34 at 6.)  This may be so, at least

under the appropriate circumstances, but Plaintiff makes no attempt to explain how or why the

continuing violation doctrine is applicable here.[7]

---

[7]     Plaintiff also argues that "it is believed that summary judgment is not appropriate . . .
where there is no admissible evidence in the record challenging the timeliness of the incidents of
continuing violations."  (D.E. 34 at 6.)  This argument is puzzling (and unpersuasive), given that
Plaintiff identifies the specific dates of the alleged physical and verbal abuse in her
complaint—all of which are alleged to have occurred on dates that are well beyond the statute of

Despite Plaintiff's failure to make any meaningful argument on this front, the Court, in an abundance of caution, nonetheless considers whether Plaintiff's invocation of the continuing violation doctrine is sufficient to forestall summary judgment on Count I. As explained below, it is not.

A.     The Court Need Not Decide Whether the Alleged Assaults Are Discrete Acts, as Defendant Contends, to Find That Summary Judgment Is Appropriate

Defendant argues that each of the three alleged incidents of verbal and physical abuse are discrete acts, all of which were "independently identifiable and separately actionable under Title VII." (D.E. 28 at 10.) Defendant contends that, because they are discrete acts, the three alleged incidents of physical and verbal abuse cannot be the basis of a continuing violation claim because the incidents are time-barred under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). (*Id.*)

In *Morgan*, "the Supreme Court explained when a plaintiff may rely on the continuing violation doctrine to recover for discriminatory acts that fall outside the 300-day limitations period." *See Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004). The Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113; *see also Lucas*, 367 F.3d at 724 (holding that a discrete act occurring prior to the 300-day statutory period "cannot be rendered timely by application of the continuing violation doctrine"). A discrete act "'occurred' on the day that it 'happened.'" *Morgan*, 536 U.S. at 110. A Title VII plaintiff must, therefore,

---

limitations. Perhaps even more important, Plaintiff *concedes* that "[a]ll of the specific allegations contained in Count I . . . occurred more than 300 days before [P]laintiff filed her EEOC Charge." (Def.'s St. ¶ 26.)

file a charge with the EEOC within the statutory time period for filing such a charge as set forth in 42 U.S.C. § 2000e-5(e).

Plaintiff, however, is not seeking to hold Defendant liable for any single stand-alone act(s) of verbal and/or physical abuse. Rather, Count I sets forth a race-based hostile work environment claim. *Morgan* instructs that "[h]ostile environment claims are different in kind from discrete acts," in that "[t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. In this regard, a hostile work environment cannot, unlike a discrete act, "be said to occur on any particular day." *Id.* Rather, "[s]uch claims are based on the cumulative effect of individual acts." *Id.* Put differently, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117 (citing 42 U.S.C. § 2000e-5(e)(1)).

In contrast to a claim based on discrete acts, "[i]t does not matter, for purposes of the statute, that some of the component acts of [a] hostile work environment fall outside the statutory time period." *Id.* at 117. Indeed, "[p]rovided that an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* Stated differently, "[a] charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the [300-day statute of limitations]." *Id.* at 122. With respect to a hostile work environment claim, a court's task, then, "is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the [300 day statute of limitations]." *Id.* at 120.

15

In light of the Supreme Court's teachings in *Morgan*, an issue that arises in this case is whether Plaintiff has tried to improperly incorporate time-barred discrete acts of discrimination into her race-based hostile work environment claim. The resolution of this issue would necessarily require the Court to decide whether the alleged acts of verbal and physical assault are discrete acts. The Court notes that the Supreme Court identified some discrete acts in *Morgan*: termination, failure to promote, denial of transfer, or refusal to hire. *Id.* at 114. But this list is not exhaustive, leaving open the question of what other acts can be a component part of a continuing violation claim post-*Morgan*. (The Seventh Circuit has provided guidance on this issue by instructing that a discrete act is one that an employee knows or should know (with the exercise of reasonable diligence) is discriminatory. *See Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002) (collecting cases).) The Court need not resolve this issue, however, because, as set forth below, even if the alleged acts of verbal and physical assault are not time-barred because they are not discrete acts, none of the acts that comprise the hostile work environment claim falls within the 300 day statute of limitation, and thus any hostile workplace claim would be untimely.

B.      Plaintiff's Termination Is Not Part of the Hostile Work Environment Claim

Defendant argues that even if the acts of harassment identified in Count I are not discrete acts, but rather are parts of a continuing violation, summary judgment should be granted to Defendant because any such continuing violation in these circumstances is untimely. (D.E. 28 at 12.) Plaintiff does not respond to this argument.

A review of the record and applicable precedent confirms that Defendant's argument is meritorious. The Supreme Court instructs that a district court should "determine whether the acts

16

about which an employee complains are part of the same actionable hostile work environment practice." *Morgan*, 536 U.S. at 120. In this regard, the alleged acts of physical and verbal abuse "cannot be considered unless [Plaintiff] can point to an act that is part of the same hostile work environment and that falls within the limitations period." *Lucas*, 367 F.3d at 725. Plaintiff does not attempt, as she must, to link the alleged verbal and physical assaults to an act that is not time-barred.

The Court notes that the only potentially timely act is Plaintiff's termination, and the Court proceeds with its analysis as if Plaintiff made such an argument. The issue, then, is whether Plaintiff's termination is part of the same hostile work environment as the alleged acts of physical and verbal abuse.

Defendant argues that the Plaintiff cannot rely on her termination to make the other acts timely. In this regard, Defendant argues that the assaults are wholly unrelated to her discharge. As Defendant points out, Plaintiff does not allege that Gerht or Shanovich "had any involvement whatsoever in [D]efendant's decision to terminate [P]laintiff." (D.E. 28 at 13.) Defendant also points out that Plaintiff's termination occurred almost two years after the last alleged assault, and argues that "[P]laintiff's continuing violation claim may not encompass both her allegations of harassment and unlawful termination, and the termination cannot, therefore, save her untimely harassment claims." (*Id.*) The Court addresses each of Defendant's arguments in turn.

Plaintiff has not advanced any argument, nor does it appear, that the alleged incidents of verbal and physical assault are in any way connected to her termination. As Defendant points out, there is no allegation, let alone evidence, that Gerht and/or Shanovich were involved in the decision to terminate Plaintiff. Plaintiff's failure to present any evidence linking any of the acts

17

of verbal or physical assault to her termination defeats her attempt to invoke the continuing violation doctrine here. *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (Kearse, J.) ("[Plaintiff] proffered no evidence to show that the termination, even if discriminatory, was in furtherance of the alleged practice of racial harassment. Accordingly, the district court properly dismissed all of [Plaintiff's] Title VII claims of hostile work environment as untimely."); *Wallin v. THC-Chicago, Inc.*, No. 99 -3173, 2004 WL 2535283, at *7 (N.D. Ill. Sept. 23, 2004) (Nordberg, J.) (holding that a "plaintiff's termination cannot be used as the hook to draw in the untimely acts" purportedly comprising sex- and religion-based hostile work environments because the plaintiff's termination "was not an act creating a hostile environment but was . . . an example of disparate treatment . . . . [and] therefore [was] not part of the same hostile environment claim"). Indeed, under *Morgan*, Plaintiff's termination would have to contribute to her race-based hostile work environment claim to make that claim timely, *see Morgan*, 536 U.S. at 117, and plaintiff does not argue, let alone present evidence, that such is the case here.[8] *See also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (holding that a claim of race-based harassment is not encompassed by general allegations in an EEOC charge of unlawful termination based on race).

The almost two-year gap between the last act of assault and Plaintiff's termination also seriously undermines any attempt by Ms. Knowles to invoke the continuing violation doctrine here. *See Selan v. Kiley*, 969 F.2d 560, 567 (7th Cir. 1992). The Seventh Circuit has stated that

---

[8]     The Court notes that, with respect to a hostile work environment claim, a plaintiff must show that, among other things, she was subjected to harassment so severe or pervasive that it altered the conditions of her employment. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004). Termination, however, ends that employment. Knowles offers no theory by which her termination could "contribute" to a hostile work environment claim.

18

"[t]he concept of cumulation suggests a critical limiting principle. Acts . . . so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single chain, a single course of conduct, to defeat the statute of limitations." *Lucas*, 367 F.3d at 727 (quoting *Tinner*, 308 F.3d at 708) (emphasis omitted). In this vein, the Seventh Circuit has instructed that it is appropriate to look at, among other factors, "the frequency with which [alleged discriminatory] acts occur" to determine whether a continuing violation claim is actionable. *Tinner*, 308 F.3d at 708. In *Selan v. Kiley*, 969 F.2d 560, 566-567 (7th Cir. 1992), the Seventh Circuit held "that a two-year gap between alleged discriminatory acts could not support a continuing violation claim." *Tinner*, 308 F.3d at 708-709 (citing *Selan*, 969 F.2d at 567). Specifically, the Seventh Circuit in *Selan* "held that the almost two-year [gap between incidents] was 'considerable' and 'weigh [ed] heavily against finding a continuing violation.'" *Lucas*, 367 F.3d at 727 (quoting *Selan*, 969 F.2d at 567).

In light of the Seventh Circuit's teaching in *Selan*, even if this court found that the three incidents alleged by Knowles constituted a continuing violation, her claim would still fail to be actionable because of the approximately two-year gap between the last alleged assault and her termination. The most recent alleged act, the second physical assault by Shanovich, occurred in or around March of 2001, whereas Plaintiff's employment was terminated on December 31, 2002—approximately 20 months later. Given this approximately two-year gap, the Court is not persuaded that Plaintiff's hostile work environment claim is made timely by the continuing violation doctrine.

## CONCLUSION

For the foregoing reasons, Defendant's motion for partial summary judgment is granted.

SO ORDERED.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Dated: January 3, 2005